**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
--------------------------------------------------------X
MOHAMMED M. AHMED,

                    Plaintiff,

                                                          **MEMORANDUM OF**
          -against-                                       **DECISION AND ORDER**
                                                          10-CV-3609 (ADS) (ETB)
T.J. MAXX CORP. and TJX COMPANIES,
INC.,

                    Defendants.

--------------------------------------------------------X

<u>**APPEARANCES:**</u>

**Valli & Kane, LLP**
*Attorneys for the Plaintiff*
600 Old Country Road
Suite 207
Garden City, NY 11530
          By:    Robert John Valli, Jr., Esq.
                 Aneeba Rehman, Esq.
                 Deborah Lee Rubin, Esq.
                 James Aldo Vagnini, Esq., Of Counsel

**Littler Mendelson, P.C.**
*Attorneys for the Defendants*
532 Broadhollow Road
Suite 142
Melville, NY 11747
          By:    Gregory Clark Keating, Esq.
                 John Thomas Bauer, Esq.
                 Justin Robert Marino, Esq.
                 Andrew Voss, Esq.
                 Lisa Marie Griffith, Esq.
                 Lisa Schreter, Esq., Of Counsel

**SPATT, District Judge.**

          On August 5, 2010, the Plaintiff Mohammad M. Ahmed ("the Plaintiff")

commenced this action against the Defendants T.J. Maxx Corp. and TJX Companies, Inc.

("the Defendants").  The Plaintiff, a former Assistant Store Manager employed by the

Defendants, alleges that the Defendants failed to compensate the Plaintiff for overtime

hours worked and retaliated against him in violation of the Fair Labor Standards Act, 29

U.S.C. § 201, et seq. ("FLSA"), and New York State Labor Law § 215, et seq.

("NYSLL").

On April 20, 2012, the Plaintiff moved for conditional certification of this lawsuit

as a collective action pursuant to FLSA § 16(b), 29 U.S.C. § 216(b).  In addition, the

Plaintiff sought an order (1) authorizing the Plaintiff to send a notice of this action along

with a consent form (opt-in form) to all Assistant Store Managers currently and/or

formerly employed by the Defendants, outside of California, within three years of the

filing of the Complaint, or from August 5, 2007; (2) directing the Defendants to produce

the names, last known mailing addresses, alternate addresses, telephone numbers, last

known email addresses, social security numbers and dates of employment of all covered

Assistant Store Managers; and (3) directing the Defendants to post the notice and/or

deliver a memo, along with the consent forms, in a place where covered Assistant Store

Managers are likely to view it in all stores owned and/or operated by the Defendants.

The Defendants opposed the motion.

On November 14, 2012, United States Magistrate Judge E. Thomas Boyle ("Judge

Boyle") granted the Plaintiff's motion for conditional authorization to proceed as a

collective action.  Presently pending before the Court is the Defendants' motion to set

aside Judge Boyle's November 14, 2012 Decision ("the Decision"), which was filed by

the Defendants on November 28, 2012 pursuant to Federal Rule of Civil Procedure

("Fed. R. Civ. P.") 72(a).  For the reasons set forth below, the Court grants the Defendants' motion.

## I. BACKGROUND

### A.  Underlying Facts

On October 17, 2008, the Plaintiff was hired by the Defendants as an Assistant Store Manager.  The Plaintiff worked primarily at one of the Defendants' stores located in Oceanside, New York.  According to the Plaintiff, he typically worked between 60 to 70 hours per week and often worked six days per week.  He never received overtime wages for working in excess of 40 hours per week, even after he requested this compensation.  The Plaintiff claims that "[o]n nearly [a] daily basis, the store manager expected [him] to perform tasks including cleaning the store, cleaning the bathrooms, unloading the delivery trucks three times per week, stocking the store shelves and running the register."  (Compl., ¶ 34.)

In addition, the Plaintiff alleges that once he began complaining that he was not being properly compensated for overtime work, the Defendants began to retaliate against him.  The Plaintiff was apparently written-up on three separate occasions shortly after he began making his complaints.  Then, on or about July 4, 2010, the store manager terminated the Plaintiff's employment with the Defendants.

One month after the termination of his employment, on August 5, 2010, the Plaintiff commenced this lawsuit by filing his Complaint pursuant to the FLSA and the NYSLL.  He seeks damages for his lost compensation and job benefits, emotional distress, humiliation, embarrassment and anguish, as well as front pay until can be placed in the same position he would have occupied but for the Defendants' alleged practices.

He also seeks punitive damages, attorneys' fees and costs and pre-judgment and post-judgment interest.

Moreover, of relevance here, in his Complaint the Plaintiff indicates that he brings his FLSA claim as a collective action pursuant to FLSA § 16(b), 29 U.S.C. § 216(b). The Plaintiff's Complaint defines the FLSA Collective Class as follows:

> All Assistant Managers working for [the Defendants] three years prior to the date of filing, who have been subject to [the Defendants] policies of requiring Assistant Managers to perform the duties of hourly employees without proper compensation of overtime required by the FLSA.

(Compl., ¶ 9.)

On January 17, 2012, Andrea Casale ("Casale") filed a consent to join this action. According to Casale, she was formerly employed as an Assistant Store Manager by the Defendants from sometime in July 2007 until October 31, 2008. Casale worked primarily in the Defendants' store located in Commack, New York and was required to work approximately 60 to 80 hours per week.

Casale claims that she was misclassified as an exempt employee, since she exercised no real authority within her store and because a significant part of her weekly duties involved the performance of non-managerial tasks. These tasks included ringing the register, unloading delivery trucks and cleaning the bathrooms. She also apparently worked at other New York stores located in Kings Park, Oceanside, Massapequa, Selden and Rosedale, where she claims to have witnessed other Assistant Store Managers engaged in performing primarily non-managerial duties, including unloading the trucks, ringing the registers, cleaning the store, running merchandise to the floor and stocking the

store.  Casale asserts that she was not compensated for any overtime work although she should have been pursuant to the FLSA.

## B.  The Plaintiff's Motion for Conditional Certification

On April 20, 2012, about one year and nine months after filing the Complaint, the Plaintiff moved for conditional certification.  The Plaintiff argued that he and similarly situated employees had not only met, but had exceeded the requirement for preliminary certification, which has a low evidentiary bar, by demonstrating that Assistant Managers were labeled "exempt" under the FLSA and denied overtime pay, even though they spent the majority of their time performing non-exempt duties.  These non-exempt duties included working the register, stocking, unloading the trucks, running merchandise out of the floor and cleaning.

The Plaintiff also attempted to distinguish two recent district court decisions, Guillen v. Marshalls of MA, Inc., 841 F. Supp. 2d 797 (S.D.N.Y. 2012), adopted by 2012 No. 09 Civ. 9575(LAP)(GWG), 2012 WL 2588771, at *1 (S.D.N.Y. July 2, 2012) (hereinafter, "Guillen II"), and Jenkins v. TJX Companies Inc., et al., 853 F. Supp. 2d 317 (E.D.N.Y. 2012) (Spatt, J.).  Both these cases involved subsidiaries of the Defendants.  In Guillen II, the court denied conditional certification, because the plaintiff Martin Guillen, a former assistant manager employed by the defendant Marshalls of MA, Inc., failed to show that he was similarly situated to other assistant managers nationwide. 841 F. Supp. 2d at 800–04.  Similarly, in Jenkins, this Court held that conditional certification of a nationwide class was not warranted, since the plaintiff Jack Jenkins, an assistant store manager for the defendant Homegoods, failed to demonstrate that he was similarly situated to other assistant store managers nationally.  853 F. Supp. 2d at 321–25.

According to the Plaintiff, <u>Guillen II</u> was distinguishable from the present action because in this case there is clear evidence of a uniform corporate practice of reducing labor budgets nationwide, which in turn has directly resulted in a de-facto policy of Assistant Store Mangers logging more hours and performing primarily non-exempt duties to make up for the lost hourly staff. The Plaintiff further contended that <u>Jenkins</u> was significantly different than the case at bar because unlike the <u>Jenkins</u> plaintiff, who failed to provide any factual support for his allegations, the Plaintiff here provided substantial factual support for his allegations. This factual support included (1) the sworn deposition testimony of nine current and former Assistant Managers and Store Managers from New York and Connecticut, including the Plaintiff and Casale; (2) affidavits from a former Assistant Manager and a current Coordinator; (4) four depositions of designated Rule 30(b)(6) Corporate employees; (5) uniform job descriptions emanating from Corporate; and (6) online complaints from current and former employees of the Defendants from across the country.

On May 21, 2012, the Defendants opposed the Plaintiff's motion. The Defendants argued that the evidence offered by the Plaintiff did not justify nationwide notice. In this regard, the Defendants emphasized that the Plaintiff's deposition testimony indicated that the reason he largely performed non-exempt tasks as an Assistant Store Manager was because of how his Store Managers treated him, and not due to any common policy or plan applicable to all Assistant Store Managers across the United States. Furthermore, the Defendants contended that the Plaintiff testified that his knowledge of the responsibilities of other Assistant Store Managers employed by the Defendants was limited to his work at the Oceanside and Commack stores. In addition,

the Plaintiff apparently admitted that he was not actually aware of whether his co-Assistant Store Managers at the Commack and Oceanside stores engaged in managerial duties, such as completing associate performance evaluations, interviewing, hiring, disciplining, providing orientation to new-hires, discounting merchandise, recruiting and scheduling.  Finally, the Defendants assert that in their deposition testimony, the Plaintiff's supervisor, co-Assistant Store Managers and a former subordinate employee directly challenge the Plaintiff's allegations.

The Defendants also criticized Casale's deposition testimony.  First, the Defendants noted that Casale was not within the scope of the Plaintiff's proposed class because she filed her consent more than three years after she resigned from her position as an Assistant Store Manager with the Defendants.  As such, the Defendants contended that Casale did not have personal knowledge of the experience of an Assistant Store Manager during the relevant time period.  The Defendants further pointed out that Casale admitted that she and other Assistant Managers exercised managerial responsibilities.  Moreover, outside the Commack store, which was her permanent assignment, Casale only spent one or two days filling in at the other New York stores.  Thus, the Defendants alleged that she has no basis for evaluating what the daily duties were for the Assistant Store Managers at these locations.  Lastly, the Defendants stress that Casale, like the Plaintiff, blamed her Store Manager for her experience while working as an Assistant Store Manager.

Further, the Defendants made several legal arguments in opposition to the Plaintiff's motion.  First, the Defendants argued that the Plaintiff never commenced a collective action, since he never filed, in court, his written consent to become a party

plaintiff. Therefore, he was barred from requesting that the court provide notice to the proposed nationwide class pursuant to FLSA. Second, the Defendants asserted that the Plaintiff had not met the burden of proof required for the authorization of notice under the FLSA, because he had not offered some identifiable factual nexus binding him and potential class members together as victims of a particular practice. Third, the Defendants stated that the Plaintiff erred by relying on the Defendants' uniform job descriptions, policies and training for the position of Assistant Store Managers to establish the factual nexus. According to the Defendants, similar attempts were rejected in Guillen v. Marshalls MA, Inc., 750 Supp. 2d 349 (S.D.N.Y. 2010) (hereinafter "Guillen I"), Guillen II and Jenkins.

The Plaintiff did not actually discuss Guillen I in his moving papers. However, the Court notes that Guillen I and Guillen II are both decisions that came out of the same case. In Guillen I, the plaintiff Martin Guillen moved for the first time for conditional certification, but his motion was denied because he had failed to establish that he was similarly situated to other Assistant Store Managers nationally. After completing further discovery, Guillen moved a second time for conditional certification, but, as discussed above, his motion was again denied.

Lastly, the Defendants argued that the Plaintiff's effort to distinguish his case from Guillen I, Guillen II and Jenkins was without merit. In this regard, the Defendants challenged the Plaintiff's assertion that because the Defendants maintained a uniform corporate practice of reducing labor budgets nationwide, Assistant Store Managers ended up spending the majority of their time performing non-exempt tasks to make up for the lost labor hours. The Defendants contended that the Plaintiff's labor reductions budget

theory relied solely on speculation and surmise, in that it was based primarily on the Plaintiff's own testimony. According to the Defendants, the Plaintiff also ignored that planned sales were also reduced at the same time labor hours were reduced, which would explain how the Defendants' stores could continue to operate with a smaller labor force while not expecting Assistant Store Managers to perform non-exempt tasks.

In his reply to the Defendants' opposition, filed on June 11, 2012, the Plaintiff countered that (1) the FLSA and applicable case law did not require that written consent be filed before a plaintiff moves for conditional certification or before such a motion was decided; (2) Casale's claims were probative of the polices applicable to the prospective class even though her employment may have fallen outside the statutory period; (3) the Plaintiff sufficiently established that he and other Assistant Store Managers across the nation were similarly situated by submitting pleadings and affidavits; and (4) the decisions in <u>Guillen I</u>, <u>Guillen II</u> and <u>Jenkins</u> have been distinguished by other courts in the Second Circuit.

## C. Judge Boyle's November 14, 2012 Decision

On November 14, 2012, Judge Boyle issued a decision granting the Plaintiff's motion for conditional certification. First, Judge Boyle determined the Plaintiff was not required under the FLSA to file a written consent before filing his motion for conditional certification. In this regard, Judge Boyle highlighted that the Defendants indicated in their Answer to the Complaint that they were aware of the Plaintiff's consent and intent to pursue his claims as part of a collective action. Thus, Judge Boyle held that he would consider the Plaintiff's motion for preliminary certification on its merits.

Second, Judge Boyle distinguished the present action from Guillen I, Guillen II and Jenkins. Judge Boyle explained that the decision not to certify the collective action in Guillen I and Guillen II was based on the fact that all the evidence in that case came from potential plaintiffs working in the same geographical area. Citing to Ravenell v. Avis Budget Car Rental, LLC, No. 08-CV-2113 (SLT)(ALC), 2010 WL 2921508 (E.D.N.Y. July 19, 2010), and Stevens v. HMSHost Corp., No. 10 Civ. 3571(ILG(VVP), 2012 WL 4801784 (E.D.N.Y. Oct. 10, 2012), Judge Boyle emphasized that the Plaintiff in the present action offered sworn testimony from Assistant Store Managers based in more than one state. In this regard, he pointed to Casale's affidavit, as well as the deposition testimony of Joseph Paparatto ("Paparatto"), an Assistant Store Manager located in Connecticut who Judge Boyle believed corroborated the Plaintiff's allegations.

Third, Judge Boyle found that based on case law, the presence of national polices – in this case, the Defendants' use of the same job description, policies and responsibilities for all Assistant Store Managers across the nation – was sufficient to support certification of a nationwide class, even if the national policies did not violate the FLSA on their face. It does not appear that Judge Boyle addressed the Plaintiff's labor reductions budget theory.

Judge Boyle noted that the Plaintiff had only a modest burden of demonstrating that the potential plaintiffs were similarly situated. As such, based on the above reasoning, Judge Boyle determined conditional collective action certification was appropriate in this case and, thus, granted the Plaintiff's motion for conditional certification of a collective action on behalf of all Assistant Store Managers employed by the Defendants from August of 2007 through the present.

**D.  The Defendants Objections to the Decision**

On November 28, 2012, the Defendants filed a motion seeking to set aside the Decision pursuant to Fed. R. of Civ. P. 72 (a).  The Defendants specifically object to the following:  (1) Judge Boyle's finding that <u>Guillen I</u> and <u>Guillen II</u> were distinguishable from the present action; (2) Judge Boyle's determination that nationwide polices that are lawful on their face can form a factual nexus between the Plaintiff and the putative class, which was in contradiction with the holdings of <u>Jenkins</u>, <u>Guillen I</u>, and <u>Guillen II</u>; (3) Judge Boyle's use of an allegedly new "more than one state" litmus test for certifying a nationwide collective action; (4) Judge Boyle's consideration of Casale's testimony only to the extent that it corroborated the Plaintiff's claims; (5) Judge Boyle's reliance on the testimony of the Plaintiff and Casale, when both attributed their experiences to their Store Managers and the Plaintiff's knowledge was limited to the two New York stores where he had worked; (6) Judge Boyle's failure to evaluate the testimony of the four Assistant Store Managers that worked with the Plaintiff and who refuted the Plaintiff's claim of primarily performing non-exempt tasks; (7) Judge Boyle's finding that the testimony of Paparatto corroborated the Plaintiff's claims; and (8) Judge Boyle's decision to begin the notice period three years before the Complaint was filed instead of three years from the date of the Decision.

On December 12, 2012, the Plaintiff opposed the Defendants' motion.  The Plaintiff argues that he has not only met but that he has exceeded the low burden required for preliminary certification.  In this regard, the Plaintiff points to the pleadings,

11

affidavits and deposition testimony of himself, Casale and other employees that supported his position that Assistant Store Managers regularly performed non-exempt duties while working in excess of 40 hours per week. The Plaintiff further notes that former Assistant Store Manager Marion Settle ("Settle"), who had worked for the Defendants in Arkansas, had filed a separate complaint and affidavit in the state of Arkansas. Settle similarly alleges that he and other Assistant Store Managers consistently performed non-managerial tasks. Settle's complaint and affidavit were not included with the plaintiff's original motion, but were attached to his June 11, 2012 reply papers. In addition, it appears that Settle has decided to not become an opt-in plaintiff in this case.

According to the Plaintiff, Judge Boyle correctly found that the present case was distinguishable from <u>Jenkins</u>, <u>Guillen I</u>, and <u>Guillen II</u>, because unlike in those cases, the Plaintiff here produced sworn affidavits and testimony concerning Assistant Store Managers outside of New York, as well as evidence supporting his labor budget reductions theory. The Plaintiff's also contends that the "more than one state" litmus test was not new, but was supported by case law, including <u>Guillen I</u> and <u>Guillen II</u>. The Plaintiff notes that the Defendants advocated limiting discovery in this case to Long Island stores, but now uses that limitation to argue for setting aside the Decision. In addition, the Plaintiff alleges that the Defendants err in relying on factual disputes and challenges to the underlying merits of the Plaintiff's claim, as these issues are more appropriately raised at the decertification stage. Lastly, the Plaintiff asserts that Judge Boyle committed no clear error by ordering that employee contact information be disclosed to Assistant Store Managers who worked three years prior to the filing of this

lawsuit, and, in the alternative, requests that the Court apply equitable tolling to allow the notice period to extend to three years preceding the Complaint.

The Defendants replied to the Plaintiff's opposition on December 18, 2012. The Defendants reiterate that the Decision was inconsistent with the previous holdings in Guillen I, Guillen II and Jenkins. The Defendants further argue that the Plaintiff's opposition papers raise factual and legal arguments that did not form the basis of Judge Boyle's decision to conditionally certify the class but, rather, were implicitly rejected in the Decision.

## II. DISCUSSION

### A.  Legal Standard for Reviewing Objections Pursuant to 28 U.S.C. § 636(b)(1)(A) and Fed. R. Civ. P. 72(a)

Title 28 U.S.C. § 636(b)(1)(A) allows "a magistrate judge to hear and determine any pretrial matter pending before the court."  In this regard, "a magistrate judge has jurisdiction over a motion seeking conditional class certification because it is only a preliminary determination and is not dispositive."  Summa v. Hofstra University, 715 F. Supp. 2d 378, 383–84 (E.D.N.Y. 2010) (collecting cases) (internal quotation marks and alterations omitted); see also Harper v. Gov't Employees Ins. Co., 826 F. Supp. 2d 454, 456 (E.D.N.Y. 2011) ("A motion to authorize a collective action, unlike a motion for class certification pursuant to Rule 23 of the Federal Rules of Civil Procedure, is a non-dispositive motion upon which a [m]agistrate [j]udge has authority to rule.").  Thus, the Decision "granting conditional certification of this action as a collective action for purposes of notice and discovery, and for allowing potential plaintiffs to opt-in to the case concerns a non-dispositive pretrial matter."  Summa, 715 F. Supp. 2d at 384.

Pursuant to Fed. R. Civ. P. 72(a), when reviewing a magistrate judge's decision on a non-dispositive matter, the Court may modify or set aside any portion of the decision found to be "clearly erroneous or contrary to law." Thomas E. Hoar, Inc. v. Sara Lee Corp., 900 F.2d 522, 525 (2d Cir. 1990); see also 28 U.S.C. § 636(b)(1)(A) ("A judge of the court may reconsider any [non-dispositive] pretrial matter . . . where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law.") A finding is clearly erroneous if "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." United States v. U.S. Gypsum Co., 333 U.S. 364, 395, 68 S. Ct. 525, 92 L. Ed. 746 (1948); United States v. Isiofia, 370 F.3d 226, 232 (2d Cir. 2004). An order is contrary to law "when it fails to apply or misapplies relevant statutes, case law, or rules of procedure." Catskill Dev., L.L.C. v. Park Place Entrn't Corp., 206 F.R.D. 78, 86 (S.D.N.Y. 2002) (citation omitted).

**B. Legal Standard for Conditional Certification in an FLSA Action Pursuant to 29 U.S.C. § 216(b)**

29 U.S.C. § 216(b) provides that parties suing for relief under 29 U.S.C. §§ 206, 207, and 215(a)(3) may proceed "for and in behalf of himself or themselves and other employees similarly situated." A proceeding under this provision is traditionally termed a "collective action." Here, the Plaintiff seeks relief under Section 207 of the FLSA, which governs overtime compensation. Thus, the collective action provision of Section 216(b) is applicable.

A collective action under Section 216 is distinguishable in several ways from the more common class action under Fed. R. Civ. P. 23. First, a collective action requires class members to opt into the case, rather than opt out. See, e.g., Iglesias–Mendoza v. La

Belle Farm, Inc., 239 F.R.D. 363, 368 (S.D.N.Y. 2007). In addition, a party seeking conditional certification of a collective action need not demonstrate the Rule 23 requirements of numerosity, commonality, typicality, and adequacy of representation. See Scholtisek v. Eldre Corp., 229 F.R.D. 381, 386 (W.D.N.Y. 2005).

Rather, certification of a collective action class in an FLSA case is analyzed in two steps. The first step, at issue here, is called conditional certification and is generally completed prior to the commencement of any significant discovery. Lynch v. United Servs. Auto. Ass'n, 491 F.Supp.2d 357, 368 (S.D.N.Y. 2007). At this stage, a plaintiff must only make "a modest factual showing sufficient to demonstrate that [he] and potential plaintiffs together were victims of a common policy or plan that violated the law." Realite v. Ark Rests. Corp., 7 F.Supp.2d 303, 306 (S.D.N.Y. 1998). The standard applied is "fairly lenient." Iglesias–Mendoza, 239 F.R.D. at 367 (internal quotations and citations omitted). "Plaintiffs may satisfy this requirement by relying on their own pleadings, affidavits, declarations, or the affidavits and declarations of other potential class members." Hallissey v. America Online, Inc., No. 99-CIV-3785 (KTD), 2008 WL 465112, at *1 (S.D.N.Y. Feb. 19, 2008). Once a court conditionally certifies a collective action, it may then facilitate notice to all of the putative class members by approving a notice form. Lynch, 491 F.Supp.2d at 367 (citing Hoffmann–La Roche Inc. v. Sperling, 493 U.S. 165, 173, 110 S. Ct. 482, 107 L. Ed. 2d 480 (1989)).

The second step in a collective action certification generally arises only after discovery is completed, and only if it appears that some or all members of a conditionally certified class are not similarly situated. In that case, a defendant may move to challenge

certification, at which point a court will conduct a more searching factual inquiry as to whether the class members are truly similarly situated. Lynch, 491 F. Supp. 2d at 367.

## C. As to Whether Judge Boyle Applied the Appropriate Legal Standard and Correctly Evaluated the Evidence When Issuing the Decision

The Defendants object to the Decision, in part, because they argue that Judge Boyle failed to apply the appropriate legal standard and incorrectly evaluated the evidence when making his determination. In this regard, the Defendants contend that Judge Boyle wrongly distinguishes this action from Guillen I, Guillen II and Jenkins and is, thus, is contradictory to those previous decisions. The Defendants further assert that Judge Boyle erred in applying a "more than one state" litmus test that was not based in any previous precedent.

In Guillen I, the plaintiff Guillen sought for the court to conditionally approve his case as a collective action. To that end, he argued that "he [was] similarly situated to Marshalls' [assistant store managers] nationwide because, despite Marshalls' idealized job descriptions and facially lawful standardized company policies, Marshalls' [assistant store managers] in fact spent the majority of their work time performing non-managerial duties." 750 F. Supp. 2d at 476 (citations and internal quotation marks and alterations omitted). Thus, "Guillen [was] not challenging the content of Marshalls' formal written polices," but "[r]ather [ ] assert[ed] that he was not actually given job duties in conformity with these policies." Id. As such, the court held that in order for Guillen "to show that he and the putative plaintiffs [were] similarly situated under 29 U.S.C. § 216(b) with respect to their allegations that the law ha[d] been violated," he was required to "show that he and the other [assistant store managers] were similarly situated with

respect to the claim that they were required to perform non-managerial job duties in contravention of the formal job description." Id. (citation and internal quotation marks omitted). Consequently, "it [was] not sufficient for Guillen to show that he and the proposed class of [assistant store managers] operated under the same job description." Id.

The Guillen I court went on to find that Guillen's evidence showing "that he [was] similarly situated to the proposed plaintiffs with respect to his allegation that he spent most of his time performing non-managerial tasks" to be "extremely thin." Id. at 476–77. In this regard, Guillen only offered "affidavits from five [assistant store managers] who experienced the allegedly illegal activities at nine of the 820 Marshalls stores nationwide," all of which were "exclusively in the New York City metropolitan area." Id. at 477. Moreover, "Guillen stated in his deposition that he [had] no personal knowledge about how stores, other than those at which he was an employee, operated." Id.

Further, the Guillen I court rejected "Guillen's conclusory statement that Marshalls employed a high degree of standardized operation practices at his store, including the use of a standardized management training program, standardized employment policies and an identical hierarchical management structure," because "[t]here [was] no information provided as to the nature of these standardized operational practices and how they relate[d] to the claim that Marshalls' [assistant store managers] [were] required to perform non-exempt tasks for a majority of their workweek in contravention of the [assistant store manager job description.] Id. (citations and internal quotation marks and alterations omitted). In addition, the court held that any argument

that the management structure of Marshalls itself justified a nationwide collective action "[was] simply not supported by reason as there may be vast differences in the practices of individual stores across the country." Id. at 477–78.

Accordingly, the Guillen I court concluded that "there [was] virtually no basis on which to conclude that [assistant store managers] nationwide [were] similarly situated to Guillen with respect to his allegation that he spent the majority of his time performing non-managerial task." Id. at 479. However, of importance, in reaching this conclusion, the Guillen I court distinguished its case from Indergit v. Rite Aid Corp., No. 08 Civ. 9361(PGG), 08 Civ. 11364(PGG), 2010 WL 2465488 (S.D.N.Y. Nov. 16, 2010). Id. In Indergit, the court granted the plaintiff's motion to certify a nationwide collective action where the plaintiff alleged that he and other assistant store managers working at Rite Aid stores were performing mostly non-managerial duties. 2010 WL 2465488, at *10. The Guillen I court found Indergit distinguishable because "in Indergit, there was evidence that the company had attempted 'to raise profits by decreasing the hours worked by hourly employees and transferring their job duties to Management.'" Guillen I, 750 F. Supp. 2d at 479 (quoting Indergit, 2010 WL at *2). The Guillen I court construed this as "evidence that Rite Aid had a 'national policy' that required [the] plaintiff, along with all other assistant managers, 'to perform those tasks formerly being performed by non-exempt employees.'" Id. (quoting Indergit, 2010 WL 2465488, at *2).

Following the court's ruling in Guillen I, Guillen conducted further discovery. He then moved a second time for conditional certification. In Guillen II, the magistrate judge issued an order denying Guillen's motion. 841 F. Supp. 2d at 798. The magistrate judge found that "Guillen's latest motion add[ed] virtually no evidence suggesting that

Guillen [was] similarly situated to [assistant store managers] in Marshalls stores

nationwide with respect to the main contention in [the] case: that he was required to

perform tasks that rendered him non-exempt from the FLSA's overtime requirements."

Id. at 800.  While Guillen provided evidence from one additional assistant store manager,

this assistant store manager, "like the [assistant store managers] who submitted affidavits

in Guillen I, was employed in New York City Stores."  Id.

Therefore, the magistrate judge held as follows:

> Guillen provides no evidence [ ] that could
> plausibly lead to the inference that ASMs nationwide are
> performing non-exempt tasks.  There is nothing, for
> example, in Marshalls' job description that calls for the
> performance of these non-exempt duties. Nor is there
> anything in the record suggesting that Marshalls expects
> ASMs nationwide to perform nonexempt work or is aware
> that they do so. . . .
>
> Guillen's argument boils down to the proposition
> that any employee classified as exempt by a company that
> does business nationwide is entitled to approval of a
> collective action for all employees of that business – who
> may number in the thousands and be spread across 50 states
> – simply based on the employee's testimony that he was
> required to perform non-exempt tasks.  We reject this
> argument because it ignores the requirement that plaintiff
> show he is similarly situated to the employees he proposes
> to include in the collective action with respect to his claim
> that he performed non-exempt duties.  Guillen has simply
> not made the "modest showing" required by case law that
> would allow the conclusion that ASMs across the country
> have been performing the non-exempt duties.

Id. at 800–01; see also Vasquez v. Vitamin Shoppe Indus. Inc., No. 10 Civ.

8820(LTS)(THK), 2011 WL 2693712, at *3 (S.D.N.Y. July 11, 2011) (holding that a

"geographically concentrated cluster of [store managers] whom [plaintiff] claims were

assigned duties inconsistent with their exempt classification . . . is too thin a reed on which to rest a nationwide certification").

The magistrate judge emphasized that a "plaintiff must provide 'actual evidence of a factual nexus between his situation and the persons he claims are similarly situated[,]'" but that Guillen had failed to do so. <u>Guillen II</u>, 841 F. Supp. 2d at 801 (quoting <u>Prizmic v. Armour, Inc.</u> No. 05-CV-2503 (DLI)(MDG), 2006 WL 1662614, at *2 (E.D.N.Y. June 12, 2006)) (internal alterations omitted). Furthermore, in response to Guillen's argument that "any overinclusiveness in the scope of the collective action should be corrected during the second stage of review following conditional certification, the magistrate judge held that "it would be a waste of the [c]ourt's and the litigants' time and resources to notify a large and diverse class only to later determine that the matter should not proceed as a collective action because the class members are not similarly situated." <u>Id.</u> at 803 (citations and internal alterations omitted).

The district court judge adopted the decision of the magistrate judge in <u>Guillen II</u>. 2012 WL 2588771, at *1. In doing so, the district court stated "that [Guillen's] argument for conditional nationwide class certification is fatally flawed insofar as it would require this [c]ourt to ignore [Guillen's] inability to point to a factual nexus between his own wage and hour claim and the claims of thousands of other Marhsalls [a]ssistant [s]tore [m]anagers [ ] across 830 Marshalls stores across the country." <u>Id.</u> The district court reasoned "that the mere fact of a common FLSA-exempt designation, job description or uniform training is insufficient to find [assistant store managers] 'similarly situated' for FLSA purposes." <u>Id.</u> (citing <u>Khan v. Airport Mgmt. Servs., LLC</u>, No. 10 Civ. 7735(NRB), 2011 WL 5597371, at *4 (S.D.N.Y. July 11, 2011); <u>Vasquez</u>, 2011 WL

2693712, at *4; Eng-Hatcher v. Sprint Nextel Corp., No. 07 Civ. 7350(BSJ), 2009 WL 7311383, at *3 (S.D.N.Y. Nov. 13, 2009)).  In addition, the district court noted that the "allegations [did] exist in this case [were] far too localized to merit a conditional nationwide class certification."  Id. at *2 (citing Vasquez, 2011 WL 2693712, at *3).

This Court has previously faced similar issues as those that were before the court in Guillen I and Guillen II.  In this regard, in Jenkins, 853 F. Supp. 2d at 321, the plaintiff Jenkins moved for pre-discovery conditional certification of a nationwide collective action class.  He contended that he and other assistant store managers for HomeGoods were subject to a nationwide policy which assigned them duties that rendered their classification as exempt inappropriate.  Id.  However, rather than "allege that HomeGoods' official, formal policy mandate[d] non-exempt job duties and thus violate[d] the FLSA in and of itself," Jenkins instead asserted "that, in practice, he primarily performed non-exempt duties, such as cleaning, sweeping, bagging products, hanging store signs, taking out the garbage and unloading the delivery truck."  Id.

"The Plaintiff's sole submission in support of the existence of a common de-facto policy requiring [assistant store managers] to perform non-exempt tasks [was] [Jenkins's] own deposition testimony, discussing his own personal experience."  Id.  He "provide[d] no other affidavits, depositions, or even hearsay evidence that he was actually aware of other [assistant store managers] who also primarily performed non-exempt duties."  Id.  "Nevertheless, [Jenkins] contend[ed] that such evidence beyond his own testimony [was] unnecessary," because he believed that "the existence of a common national formal policy regarding job responsibilities [was] sufficient on its own to satisfy the 'similarly

situated' requirement, even where the Plaintiff does not allege that the formal policy is itself illegal." Id.

This Court denied Jenkins' motion without prejudice, with leave to re-file with additional evidentiary support. According to the Court, "the Plaintiff [ ] failed to overcome [the] low threshold requirement for obtaining conditional class certification[,]" because "'the mere classification of a group of employees – even a large or nationwide group – as exempt under the FLSA is not by itself sufficient to constitute the necessary evidence of a common policy, plan or practice that renders all putative class members as "similarly situated" for § 216(b) purposes.'" Id. at 322–23 (quoting Vasquez, 2011 WL 2693712, at *4). Citing to the magistrate judge's decision in Guillen II, the Court explained that Jenkins' argument "ignore[d] the requirement that [a] plaintiff show he is similarly situated to *the employees he proposes to include in the collective action* with respect to his claim that he performed non-exempt duties." Id. at 324 (quoting Guillen II, 841 F. Supp. 2d at 800–01) (emphasis in original). While this Court recognized that a plaintiff's "burden at [the conditional certification] stage of the proceedings [was] modest," it refused to "certify[ ] a class of plaintiffs, likely numbering in the hundreds, on the basis of such thin factual support." Id. at 325 (citing Laroque v. Domino's Pizza LLC, 557 F. Supp. 2d 346, 356 (E.D.N.Y. 2008)).

Confronted with the holdings in Guillen I, Guillen II and Jenkins, Judge Boyle attempted to distinguish the present action in the Decision. As discussed above, he emphasized that unlike in Guillen I and Guillen II, the Plaintiff in this case has presented evidence from Assistant Store Managers working not just in New York, but also from Paparrato who worked in Connecticut. However, this Court is reluctant to conclude that

this fact alone supports significantly expanding the geographical region at issue beyond the tri-state area.  Moreover, a review of Paparrato's deposition testimony shows that, contrary to Judge Boyle's finding, he did not corroborate the Plaintiff's claims.  Rather, Paparrato indicated that his responsibilities as Assistant Store Manager included conducting interviews for new hires, participating in hiring new associates, contributing to decisions to terminate employees, disciplining employees and scheduling.  He also stated that he rarely performed non-managerial tasks such as ringing the register or unloading the trucks.

Further, while Judge Boyle seemed to emphasize that a plaintiff can meet his burden if the potential plaintiffs worked in more than one state, the Court is disinclined to find such a fact dispositive.  In this regard, Judge Boyle relied on the decisions in Ravenell and Stevens to demonstrate that "where named plaintiffs have been able to provide supporting statements from potential plaintiffs working outside of the named plaintiff's geographic area, collective action certification has generally been granted." (The Decision, pg. 7.)  However, this Court respectfully finds that the Decision does not, in part, correctly set forth the holdings in these cases.

In Ravenell, the plaintiffs challenged rental car company Avis's classification of shift managers as managerial employees exempt from the FLSA and, thus, not entitled to overtime compensation.  2010 WL 2921508, at * 1.  They sought to certify a class of approximately 1100 shift managers nationwide.  Id.  The plaintiffs in the case had served as shift managers in airports located in Washington, D.C. and in New York.  Id.

The Ravenell court determined that the plaintiffs had met the preliminary standard for conditional certification, because "Avis concede[d] that all shift managers nationwide

were classified as exempt and [the] [p]laintiffs testified that, despite this classification, they were engaged in primarily non-managerial tasks." Id. at *4. Moreover, "Avis's own corporate documents [ ] reveal[ed] that all Avis shift managers, wherever located, were treated as part of a category of similarly situated employees" in that "the job advertisement, job description and training materials for the shift manager position applied to *all* Avis shift managers." Id. (emphasis in original).

As stated above, Judge Boyle relies on Ravenell to demonstrate that courts typically grant conditional certification when potential plaintiffs worked in more than one state. However, in Jenkins, this Court implicitly rejected the above reasoning from Ravenell. Citing to the magistrate judge's decision in Guillen II, the Court explained that "the argument that a plaintiff need only show that he performed tasks in contravention of a common legal policy 'boils down to the proposition that any employee classified as exempt by a company that does business nationwide is entitled to approval of a collective action for all employees of that business – who may number in the thousands and be spread across 50 states – simply based on the employee's testimony that he was required to perform non-exempt tasks.'" Jenkins, 853 F. Supp. 2d at 323 (Guillen II, 841 F. Supp. 2d at 800–01).

Further, while discussing Ravenell, among other cases, this Court emphasized that a plaintiff needed to produce significant evidence of a de-facto illegal policy where an official legal policy existed. Jenkins, 853 F. Supp. 2d at 323. In this regard, the Court noted that the Ravenell plaintiffs submitted "deposition testimony of multiple opt-ins." Id. Thus, the fact that Paparatto worked in Connecticut does not mean conditional certification is appropriate here. Rather, as this Court has indicated, the real issue is

whether the potential plaintiffs have submitted enough evidence demonstrating a de-facto illegal policy in contravention to a facially legal policy.

Furthermore, in the Court's view, when the Plaintiff's case is compared to Stevens, which Judge Boyle also relied on in the Decision, the deficiencies of the Plaintiff's evidence are, in fact, highlighted. In Stevens, the plaintiffs were former assistant store managers employed by HMHSHost Corporation or its subsidiaries ("the HMHSHost defendants"). They moved for conditional collective action certification of a nationwide class, claiming "that although they were classified as exempt from FLSA overtime requirements under [the HMHSHost defendants'] policies, their actual job duties did not fall within any exempt category." Stevens, 2012 WL 4801784, at *1.

The Stevens court found that the plaintiffs had met their burden for preliminary certification "by submitting evidence on identical job classification and training materials across all [assistant store managers] nationwide, and presenting testimony from former [assistant store managers] *across the country* regarding their actual job duties." Id. at *2 (emphasis added). The Stevens court went on to explain:

> While courts have refused to certify national collective actions based solely on an individual's deposition, see [Jenkins, 853 F. Supp. 2d at 323–24], or even based on several geographically clustered plaintiffs' depositions, see [Guillen II, 841 F.Supp.2d 800–02], here, plaintiffs have offered depositions from plaintiffs who worked at Host locations in New York, Minneapolis, Milwaukee, and Orlando. . . . Courts regularly conditionally certify collective actions based on *nationwide deposition testimony*. See Winfield v. Citibank, N.A., 843 F. Supp. 2d 397, 403–04 (S.D.N.Y.2012) (finding that plaintiffs "are similarly situated to one another and to potential opt-in plaintiffs" based on several depositions and declarations); Ravenell, 2010 WL 2921508, at *5

(certifying collective action based on deposition testimony
of multiple opt-in plaintiffs).

Id. at 3 (emphasis added).

In contrast, here, the Plaintiff has only offered deposition testimony from Assistant Store Managers, not all who corroborate the Plaintiff's claims, located in New York and Connecticut. Despite the inclusion of deposition testimony from more than one state, this Court still finds the geographical region to be extremely limited, particularly compared to Stevens, where the potential plaintiffs came from the Northeast, Southeast and Midwest. Further, while the Plaintiff attempts to expand the geographical region beyond the tri-state area by including Settle's complaint and affidavit, which he filed in an Arkansas state court, Settle has elected not to join in this matter as an opt-in plaintiff and Judge Boyle did not actually consider this affidavit when he rendered the Decision. Nevertheless, even if Judge Boyle did consider it, this Court finds that the addition of the allegations from just one assistant store manager concerning her personal experience in just two Arkansas stores is not sufficient to create a factual nexus between the Plaintiff and the thousands of Assistant Store Managers working in more than 4000 stores across nationwide.

Indeed, the Stevens plaintiffs offered deposition testimony from nine potential plaintiffs, located across the nation, who all alleged that as assistant store managers they were required to primarily do non-exempt tasks. As such, due to this, the Stevens court found that the plaintiffs had offered sufficient evidence at the preliminary certification stage to show that a de facto illegal policy existed that affected all assistant store managers. In this case, the Plaintiff's primary evidence in support of his motion for

conditional certification is (1) Settle's affidavit; (2) the Plaintiff's deposition testimony; and (3) Casale's deposition testimony, all of which he argues demonstrates that the Defendants misclassified assistant store managers as exempt employees for FLSA purposes.

However, with respect to these three Assistant Store Managers, only two have actually opted-in as plaintiffs, the Plaintiff himself and Casale. What's more, both the Plaintiff and Casale worked exclusively in the tri-state area, predominantly on Long Island, while Settle worked in just two stores in Arkansas. In addition, the knowledge of all three of these Assistant Store Managers was limited to their own personal experiences, most of which they attributed to their individual Store Managers. The Court simply cannot presume the existence of a de facto illegal policy common to all Assistant Store Managers in more than 4000 stores across the entire nation based only on allegations from three Assistant Store Managers working in merely a handful of stores in the tri-state area and in Arkansas. Also, of importance, the other four Assistant Store Managers who worked with the Plaintiff and Casale did not make the same allegations as the Plaintiff and Casale in their deposition testimony and, in some ways, their testimony even cut against the claims of the Plaintiff and Casale. Thus, because "there may be vast differences in the practices of individual stores across the country," the Court finds that the Plaintiff's evidence is "extremely thin" with respect to the existence of a nationwide de facto illegal policy so that conditional certification is simply not appropriate. Guillen I, 750 F. Supp. 2d at 476–78. See also Jenkins, 853 F. Supp. 2d. at 325; Vasquez, 2011 WL 2693712, at *3; Laroque, 557 F. Supp. 2d at 356.

In addition, in opposition to the Defendants' motion, the Plaintiff raises the labor budget reductions theory again, which Judge Boyle actually never addressed in the Decision.  While, as indicated above, "evidence that [a] company had attempted 'to raise profits by decreasing the hours worked by hourly employees and transferring their job duties to Management'" may establish a factual nexus among the potential plaintiffs, the Plaintiff's theory here is not supported by the evidence that he offers.  Guillen I, 750 F. Supp. 2d at 479 (quoting Indergit, 2010 WL at *2).  In this regard, while the evidence reveals that the Defendants' did reduce planned labor hours from 2007 to 2011, the evidence also shows that each time they reduced planned labor hours, they also reduced planned sales.  Therefore, this indicates that the Defendants' goal was not to increase profits by reducing the labor hours of hourly employees and then transfer their non-managerial responsibilities to Assistant Store Managers; instead, the evidence suggests that the Defendants' labor demands simply corresponded with the Defendants' planned sales.  Although the Court acknowledges that the Plaintiff has a low burden at this stage, such equivocal evidence cannot sustain preliminary certification.  See Jenkins, 853 F. Supp. 2d. at 325.

Of relevance, in Brickey v. Dolgencorp., Inc. 272 F.RD. 344 (W.D.N.Y. 2011), the court held that the plaintiffs' motion for conditional certification of a class action was deficient where the plaintiffs tried to establish a factual nexus based on Dolgencorp's labor budget policy, which limited the number of payroll hours for each store.  Id. at 347. In Brickey, the plaintiffs had argued "that although the policy [was] benign on its face, it [had] the direct and foreseeable effect of motivating managers to falsely reduce reported

hours for their employees, and/or to assign employees tasks to be performed 'off the clock,' which result[ed] in undercompensation of employees for overtime." Id.

The Brickey court held that the "plaintiffs . . . failed to make the requisite 'modest showing' that they 'were victims of a common policy or plan *that violated the law*." Id. (quoting Ayers v. SGS Control Servs., Inc., 2004 WL 2978296, at *4 (S.D.N.Y. 2004) (emphasis in original). It reasoned as follows:

> [The] [p]laintiffs appear to concede that Dolgencorp's hours allocation policy does not, on its face, violate the law. Furthermore, there is no evidence that Dolgencorp's hours allocation budgets were insufficient, such that managers were "forced" to violate the FLSA in order to stay within budget. . . . As such, . . . [i]t is not so much Dolgencorp's hours allocation policy about which plaintiffs complain, but the potential and indirect results of that policy. . . .
>
> The Court declines to hold that facially-lawful policies, which encourage store management to make productive use of employees' time or to report for work when scheduled, can form the equivalent of a "common policy or plan that violate[s] the law," merely because they indirectly might encourage the minimization of overtime. See [Eng–Hatcher, 2009 WL at *3–5] (denying certification of proposed collective and class actions where plaintiff alleged that legal reward policies to maximize sales and minimize overtime "incentivized" managers to act illegally). . . .

Id. at 347–48. Of importance, "[a]lthough [the] plaintiffs [in Brickey] [ ] offered some evidence that certain Dolgencorp managers flouted Dolgencorp's policies," the Court found that "[the] plaintiffs [did] not shown that such activity was widespread or common practice, or that the managers did so because they were instructed, compelled, forced or encouraged to do so by other Dolgencorp policies." Id. at 348. This Court finds this reasoning applicable to the present case, particularly since the Plaintiff's evidence in

support of the labor budget reductions theory appears to concern only the Oceanside and Commack stores.

In light of the foregoing, the Court has no choice but to respectfully find that the Decision is clearly erroneous and contrary to law. As such, the Court grants the Defendant's motion to set aside the Decision. Accordingly, the Court need not address the Defendants' objection with respect to when the notice period should have begun. Finally, the Court notes that in the event the Plaintiff uncovers additional evidence supporting conditional certification of a nationwide collective action, the Plaintiff may renew his original motion.

## III. CONCLUSION

For the reasons set forth above, it is hereby

**ORDERED** that the Defendants' motion to set aside Judge Boyle's November 14, 2012 Decision is granted; and it is further

**ORDERED** that the Plaintiff may renew his motion for conditional certification in the event he uncovers additional evidence supporting conditional certification of a nationwide collective action.

**SO ORDERED.**

Dated: Central Islip, New York
June 8, 2013

_____/s/ Arthur D. Spatt_____
ARTHUR D. SPATT
United States District Judge