**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X
MOHAMMED M. AHMED, ESSIE JOHNSON,
CARL BARUCH, ROBERT WAGNER,
JACLYN EVANS, BRITTANY WOODARD,
MABELINE MOORE, DARLENE CADE,                           **MEMORANDUM OF**
NICHOLAS BARRELLA, and                                  **DECISION AND ORDER**
ANDREA CASALE,                                          10-CV-3609 (ADS) (AYS)

                          Plaintiffs,

                  -against-

T.J. MAXX CORP. and TJX COMPANIES, INC.,

                          Defendants.

-----------------------------------------------------------X

<u>**APPEARANCES:**</u>

**Valli & Kane, LLP**
*Attorneys for the Plaintiffs*
600 Old Country Road, Suite 519
Garden City, NY 11530
          By:     Robert John Valli, Jr., Esq.
                  Fran L. Rudich, Esq.
                  James Aldo Vagnini, Esq., Of Counsel

**Littler Mendelson, P.C.**
*Attorneys for the Defendants*
532 Broadhollow Road, Suite 142
Melville, NY 11747
          By:     Gregory Clark Keating, Esq.
                  John Thomas Bauer, Esq.
                  Justin Robert Marino, Esq.
                  Andrew Voss, Esq.
                  Lisa Marie Griffith, Esq.
                  Lisa Schreter, Esq., Of Counsel

**SPATT, District Judge.**

On August 5, 2010, the Plaintiff Mohammad M. Ahmed (the "Plaintiff" or "Ahmed") commenced this action against the Defendants T.J. Maxx Corp. and TJX Companies, Inc. (collectively, "the Defendants") alleging that the Defendants failed to pay him overtime wages and retaliated against him in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., ("FLSA") and New York Labor Law ("NYLL"), while he was employed by the Defendants as an Assistant Store Manager ("ASM").

On December 19, 2013, the Plaintiff moved for conditional certification of this lawsuit as a collective action pursuant to FLSA § 16(b), 29 U.S.C. § 216(b). As of the date of the Plaintiff's motion, nine individuals have opted in to the proposed collective action: Essie Johnson, Carl Baruch, Robert Wagner, Jaclyn Evans, Brittany Woodard, Mabeline Moore, Darlene Cade, Nicholas Barrella, and Andrea Casale (collectively, the "Opt-in Plaintiffs").

On December 19, 2013, the Court referred the Plaintiff's motion to United States Magistrate Judge Arlene R. Lindsay for a decision. On September 24, 2014, Judge Lindsay denied his motion for conditional certification (the "September 24, 2014 Order").

Presently before the Court is a motion by the Plaintiff pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 72(a) to set aside the September 24, 2014 Order. For the reasons set forth below, the Court denies the Plaintiff's motion and affirms the decision by Judge Lindsay.

# I. BACKGROUND

## A. The Parties

From October 17, 2008 to July 4, 2010, the Plaintiff was employed by the Defendants as an ASM at one of the Defendants' stores located in Oceanside, New York. (Compl. at ¶ 31, 40.)  Allegedly, he worked sixty to seventy hours a week and was not paid overtime.  (Id.)   He asserts that he was required to perform non-managerial tasks, such as cleaning, loading a delivery truck, and running the register, and had no significant discretion or supervisory authority.  (Id. at ¶ 31, 35.)

The Opt-in Plaintiffs are current and former ASMs who worked in the Defendants' stores located in New York, Connecticut, Mississippi, Tennessee, and Alabama.  (September 24, 2014 Order, Dkt. No. 138, at 10.)

Defendant TJX Companies Inc. ("TJX") is allegedly the parent company of the Defendant T.J. Maxx Corp ("TJ Maxx"). (Compl. at ¶1.)  TJX has its principal place of business located in Massachusetts; it is unclear where TJ Maxx's principal place of business is located.  (Answer at ¶¶ 6, 7.) TJX and TJ Maxx operate approximately 4,000 department stores nationwide.  (The June 8, 2013 Order, Dkt. No. 82, at 26.)

The Plaintiff seeks to certify a nationwide collective action pursuant to FLSA § 216(b) of ASMs employed by the Defendants in stores outside of California in the past three years who "have been misclassified" by the Defendants as "executives" exempt from receiving payment for overtime.  (The Pl.'s Rule 72 Mem. of Law at 1.).

## B. Relevant Legal Standards

As the "executive" exemption to the FLSA overtime requirement and the requirements for conditional class certification pursuant to FLSA § 216(b) form the

background of the September 24, 2014 Order, the Court will provide a brief of overview of each provision before discussing the procedural background of this case.

**1. The Executive Exemption**

The FLSA § 207(a)(1) and NYCRR 142-2.2 require qualifying employers to compensate employees for hours worked in excess of forty hours per work week at a rate not less than one-and-one-half times the regular rate of pay subject to certain exemptions. 29 U.S.C. §§ 206(a)(1), § 207(a)(1); N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.2. One category of employees exempt from the overtime requirement under FLSA § 213(a)(1) are employees who are employed in a "bona fide executive capacity."

The applicable Department of Labor ("DOL") regulations classify employees as "executives" if (1) they are "[c]ompensated on a salary basis"; (2) their "primary duty is management of the enterprise . . . or of a customarily recognized department or subdivision thereof"; (3) they "customarily and regularly direct[ ] the work of two or more other employees"; and (4) they "ha[ve] the authority to hire or fire other employees or" if their "suggestions and recommendations" on personnel decisions "are given particular weight." 29 C.F.R. § 541.100(a)(1)–(4).

**2. Section 216(b) of the FLSA**

Pursuant to FLSA § 216(b), an employee can initiate an action in federal or state court against his or her employer "in behalf of himself . . . and other employees similarly situated." 29 U.S.C. § 216. In contrast to traditional "class actions" maintainable pursuant to Fed. R. Civ. 23, plaintiffs in an FLSA collective action "must affirmatively 'opt in' to be part of the class and to be bound by any judgment." Myers v. Hertz Corp., 624 F.3d 537, 542 (2d Cir. 2010). In addition, "FLSA collective actions, unlike class

actions brought under Rule 23, need not satisfy the standards of numerosity, typicality, commonality, or representativeness." Mendoza v. Ashiya Sushi 5, Inc., No. 12 CIV. 8629 (KPF), 2013 WL 5211839, at *2 (S.D.N.Y. Sept. 16, 2013) (quoting Young v. Cooper Cameron Corp., 229 F.R.D. 50, 54 (S.D.N.Y. 2005)); see also Fed. R. Civ. P. 23(a). Therefore, the requirements for certifying a collective action pursuant to FLSA § 216(b) are less onerous than the requirements pursuant to Fed. R. Civ. P. 23 for certifying a class action. See Costello v. Kohl's Illinois, Inc., No. 1:13-CV-1359 (GHW), 2014 WL 4377931, at *2 (S.D.N.Y. Sept. 4, 2014) ("Unlike class actions, FLSA collective actions need not satisfy the requirements of Fed. R. Civ. P. 23, and only plaintiffs who 'opt in' by filing consents to join the action are bound by the judgment.") (citing Mendoza, 2013 WL 5211839, at *2).

In that regard, although "they are not required to do so by [the] FLSA, district courts 'have discretion, in appropriate cases, to implement [§ 216(b) ] . . . by facilitating notice to potential plaintiffs' of the pendency of the action and of their opportunity to opt-in as represented plaintiffs." Myers, 624 F.3d 537, 554 (quoting Hoffmann–La Roche Inc. v. Sperling, 493 U.S. 165, 169, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989)). In exercising this discretion, the Second Circuit in Myers v. Hertz Corp., 624 F.3d 537, 554 (2d Cir. 2010) endorsed a two-step approach.

Under the first step, also known as "conditional certification," the court makes "an initial determination to send notice to potential opt-in plaintiffs who may be 'similarly situated' to the named plaintiffs with respect to whether a FLSA violation has occurred." Id. at 555. In order to show that potential opt-in plaintiffs are "similarly situated" to the named plaintiffs, the named plaintiffs must make "a 'modest factual

showing' that they and potential opt-in plaintiffs 'together were victims of a common policy or plan that violated the law.'" Id. (quoting Hoffmann v. Sbarro, Inc., 982 F. Supp. 249, 261 (S.D.N.Y. 1997)).

Plaintiffs may satisfy this burden by relying on "their own pleadings, affidavits, declarations, or the affidavits and declarations of other potential class members." Jeong Woo Kim v. 511 E. 5th St., LLC, 985 F. Supp. 2d 439, 445 (S.D.N.Y. 2013) (quoting Hallissey v. Am. Online, Inc., No. 99 Civ. 3785(KTD), 2008 WL 465112, at *1 (S.D.N.Y. Feb. 19, 2008)). However, the "modest factual showing" "cannot be satisfied simply by 'unsupported assertions[.]" Myers, 624 F.3d at 555 (quoting Dybach v. State of Fla. Dep't of Corrections, 942 F.2d 1562, 1567 (11th Cir. 1991)). Although the Second Circuit has not directly addressed the issue, district courts have found that at the first stage, a court "does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations." Amador v. Morgan Stanley & Co. LLC, No. 11 CIV. 4326 (RJS), 2013 WL 494020, at *3 (S.D.N.Y. Feb. 7, 2013); see also Lynch v. United Servs. Auto. Ass'n, 491 F. Supp. 2d 357, 368 (S.D.N.Y. 2007) ("At this procedural stage, the court does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations.").

In an FLSA exemption case, such as this, the Second Circuit stated in Myers that "plaintiffs accomplish this [modest factual showing] by making some showing that 'there are other employees . . . who are similarly situated with respect to their job requirements and with regard to their pay provisions,' on which the criteria for many FLSA exemptions are based, who are classified as exempt pursuant to a common policy or

scheme." Id. (quoting Morgan v. Family Dollar Stores, Inc., 551 F.3d 1233, 1258–62 (11th Cir. 2008)).

At the second step, which typically occurs after the completion of discovery, the court determines on "'a fuller record' whether to de-certify the action by examining 'whether the plaintiffs who have opted in are in fact 'similarly situated' to the named plaintiffs[.]" Jason v. Falcon Data Com, Inc., No. 09-CV-03990 (JG), 2011 WL 2837488, at *4 (E.D.N.Y. July 18, 2011) (quoting Myers, 624 F.3d at 555). If the record at this stage reveals that the opt-in plaintiffs are not similarly situated to the named plaintiffs, the action may be "de-certified" and the 'opt-in plaintiffs' claims may be dismissed without prejudice." Myers, 624 F.3d at 555.

At this second stage, district courts have considered the following factors in determining whether de-certification is appropriate: "'(1) disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendant which appear to be individual to each plaintiff; [and] (3) fairness and procedural considerations.'" Jason, 2011 WL 2837488 at *4 (quoting Hendricks v. J.P. Morgan Chase Bank, N.A., 263 F.R.D. 78, 83 (D. Conn. 2009)); see also Desilva v. N. Shore-Long Island Jewish Health Sys., Inc., No. 10-CV-1341 (PKC), 2014 WL 2534833 (E.D.N.Y. June 5, 2014) (same) (quoting Laroque v. Domino's Pizza, LLC, 557 F.Supp.2d 346, 352 (E.D.N.Y. 2008)).

In the present case, the Plaintiff appeals the decision by Judge Lindsay to deny his motion at the first step to conditionally certify a collective action. As such, the Court will not address the second step of the analysis.

## C. The Procedural History

As is made clear below, the present motion represents the Plaintiff's second attempt to certify a collective action. The Court will refer to the proceedings with respect to his first motion as <u>Ahmed I</u> and the proceedings with respect to his second motion as <u>Ahmed II</u>.

### 1. Ahmed I

On April 20, 2012, the Plaintiff filed a motion to conditionally certify this lawsuit as a collective action pursuant to FLSA § 216(b). In support of his motion, he primarily relied on (i) an affidavit by Marion Settle ("Settle"), a former ASM in one of the Defendants' stores in Arkansas; and (ii) the deposition testimony of Andrea Casale ("Casale"), the one individual who had opted-in to the case at that point, and seven other current and former ASMs who had worked at stores New York and Connecticut; (iii) four depositions of designated Rule 30(b)(6) Corporate employees; and (iv) the uniform job description created by the Defendants for the ASM position. (June 8, 2013 Order, Dkt. No. 82, at 30.)

On November 14, 2012, United States Magistrate Judge E. Thomas Boyle granted the Plaintiff's motion for conditional certification. Judge Boyle found that the Plaintiff had met the "modest factual showing" based on the Defendants' admission that all ASMs were classified as executives exempt from overtime pursuant to a national policy. (November 14, 2012 Order, Dkt. No. 67, at 8.) He also noted that two of the ASMs, Ahmed and Paparrato, whose testimony the Plaintiff relied on, were from different states — Connecticut and New York —, a fact which he found to be persuasive evidence that all ASMs nationwide were "similarly situated." (<u>Id.</u> at 7.).

On June 8, 2013, the Court granted a motion by the Defendants pursuant to Fed. R. Civ. P. 72 to set aside Judge Boyle's ruling for two reasons. (June 8, 2013 Order, Dkt. No. 82, at 22.) First, the Court found that the "mere classification of a group of employees — even a large or nationwide group — as exempt under the FLSA is not by itself sufficient to constitute the necessary evidence of a common policy, plan or practice that renders all putative class members as 'similarly situated' for § 216(b) purposes.'" (Id.) (quoting Jenkins v. TJX Companies Inc., 853 F. Supp. 2d 317, 323 (E.D.N.Y. 2012)).

Second, the Court found the evidence presented by the Plaintiff fell short of the "modest showing" required by the Second Circuit in Myers. The Court stated that it "simply cannot presume the existence of a *de facto* illegal policy common to all Assistant Store Managers in more than 4,000 stores across the entire nation based only on allegations from three Assistant Store Managers working in merely a handful of stores in the tri-state area and in Arkansas." (June 8, 2013 Order, Dkt. No. 82, at 27.)

In this respect, the Court found several other decisions by district courts in this Circuit to be applicable to the Plaintiff's motion. See, e.g., Jenkins v. TJX Companies Inc., 853 F. Supp. 2d 317, 324 (E.D.N.Y. 2012) (Spatt, J) (denying conditional certification where plaintiffs "failed to provide any factual support for the contention that other ASMs at HomeGoods' stores in New York, let alone nationwide, primarily performed non-exempt tasks."); Brickey v. Dolgencorp., Inc., 272 F.R.D. 344, 348 (W.D.N.Y. 2011) ("Although [the] plaintiffs have offered some evidence that certain Dolgencorp managers flouted Dolgencorp's policies [by violating the FLSA overtime provisions], [the] plaintiffs have not shown that such activity was widespread or common

practice, or that the managers did so because they were instructed, compelled, forced, or encouraged to do so by other Dolgencorp policies."); Guillen v. Marshalls of MA, Inc., 750 F. Supp. 2d 469, 477 (S.D.N.Y. 2010) ("[T]he fact that ASMs were responsible for performing non-exempt tasks in contravention of their written job requirements in nine stores in a particular metropolitan area, out of 820 stores nationwide, provides little basis to believe that Guillen is similarly situated to ASMs throughout the country with respect to his claim regarding ASM job responsibilities.").

Accordingly, the Court granted the Defendants' motion to set aside Judge Boyle's order. (June 8, 2013 Order, Dkt. No. 82, at 30.) However, the Court also granted the Plaintiff leave to renew his motion in the event he "uncover[ed] additional evidence supporting condition certification of a nationwide collective action." (June 8, 2013 Order, Dkt. No. 82, at 30.)

**2. Ahmed II**

On December 6, 2013, the Plaintiff filed a renewed motion to conditionally certify a nationwide class of ASMs employed by the Defendants in stores other than California. In support of his renewed motion, the Plaintiff offered (i) new testimony from eight current and former ASMs — Robert Wagner ("Wagner"), Jaclyn Evans ("Evans"), Darlene Cade ("Cade"), Carl Baruch ("Baruch"), Nicholas Barrella ("Barella"), Brittany Woodard ("Woodard"), Mabeline Moore ("Moore"), and Essie Johnson ("Johnson") — who worked in stores in New York, Connecticut, Pennsylvania, Mississippi, Tennessee, and Alabama; (ii) testimony from two hourly employees who have not opted into the action; and (iii) testimony from Jeffrey Souza, a former ASM, who also has not opted into this action but has filed a separate action in Massachusetts.

On December 19, 2013, the Court issued an order referring the Plaintiff's motion

to Judge Lindsay for a decision. (Dkt. No. 114.)

On September 24, 2014, Judge Lindsay denied the Plaintiff's renewed motion for

conditional certification. (September 24, 2014 Order, Dkt. No. 138.) In so doing, Judge

Lindsay first found that:

> Ahmed's reference in his renewed motion that he and the potential opt-in
> plaintiffs are similarly situated because defendants uniformly classify all
> ASMs, with the exception of the stores in California, as exempt from the
> FLSA's overtime provisions . . . is insufficient in itself to warrant
> conditional certification and was explicitly rejected by the district court in
> *Ahmed I*[.]

Id. at 8.

Next, Judge Lindsay held that the new evidence offered by the Plaintiff to be

"insufficient to support an inference that Ahmed is similarly situated to ASMs in

defendants' stores nationwide." for three reasons. Id. at 10.

First, Judge Lindsay noted that four of the eight current and former ASMs who

opted-in to the action after Ahmed I — Baruch, Wagner, Woodard, and Moore —

indicated in their testimony that their primary responsibilities were supervisory and

related to management. Id. at 11. Judge Lindsay noted that these statements were at

odds with the statements by Plaintiff who asserted that he did not have any significant

management responsibilities. Id. at 8.

Second, Judge Lindsay rejected the Plaintiff's argument that Baruch, Wagner,

Woodard, and Moore were similarly situated to him because they stated that they spent

the majority of their time performing non-managerial duties. Id. She reasoned that while

Ahmed alleges that he was required to perform such tasks by his supervisor, "Baruch,

Wagner, Woodard and Moore performed nonexempt tasks at their own discretion based upon their own assessments of the needs of the individual stores they managed." Id. She found that these distinctions further "undermin[ed] Ahmed's assertion that ASM duties were defined by a nationwide plan or policy." (Id. at 12.)

Finally, Judge Lindsay noted that the testimony of Cade, Barella and Essie Johnson ("Johnson") — all of whom worked at the Defendants' stores in New York, Pennsylvania, and Alabama, respectively — provided "some support for Ahmed's application." Id. at 14. However, she concluded that their "submissions are simply insufficient to establish a factual nexus between Ahmed and the thousands of ASMs working in more than 4000 stores nationwide." Id. Based on the foregoing, she denied the Plaintiff's renewed motion for conditional certification. Id.

Presently before the Court is the Plaintiff's motion pursuant to Fed. R. Civ. P. 72 to set aside the decision by Judge Lindsay denying his renewed motion.

## II. DISCUSSION

In this motion, the Plaintiff asserts that the September 24, 2014 Order was clearly erroneous and contrary to law for: (i) "failing to analyze . . . policy evidence that shows that [ASMs] had similar duties throughout the country"; (ii) "failing to analyze [the] testimony from six ASMs concerning their job duties"; (iii) "concluding that Ahmed had not met his low burden . . . without relying on a single decision in which an employee who has marshalled a similar constellation of evidence has been denied conditional certification"; and (iv) improperly "attempting to resolve factual disputes" between Ahmed and four opt-in Plaintiffs — Baruch, Wagner, Woodard, and Moore. (The Pl.'s

Rule 72 Mem. of Law at 2–3; <u>see also</u> the Pl.'s Rule 72 Reply Mem. of Law at 1–2.)  The Court will, in turn, address each objection.

## A. Legal Standards

Pursuant to Fed. R. Civ. P. 72(a), a district court can set aside a non-dispositive order of a magistrate judge only where it finds that the order is "is clearly erroneous or is contrary to law."

Under the clearly erroneous standard, a magistrate judge's findings "should not be rejected merely because the court would have decided the matter differently. Rather, the district court must affirm the decision of the magistrate judge unless the district court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." <u>Pall Corp. v. Entegris, Inc.</u>, 655 F. Supp. 2d 169, 172 (E.D.N.Y. 2008) (quoting <u>Rubin v. Valicenti Advisory Servs.</u>, 471 F.Supp.2d 329, 333 (W.D.N.Y. 2007)); <u>see also</u> <u>Mobil Shipping & Transp. Co. v. Wonsild Liquid Carriers Ltd.</u>, 190 F.3d 64, 67 (2d Cir. 1999) ("Under the clear error standard, we 'may not reverse [a finding] even though convinced that had [we] been sitting as the trier of fact, [we] would have weighed the evidence differently.'") (quoting <u>Anderson v. Bessemer City</u>, 470 U.S. 564, 574, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985)).  "This standard is 'highly deferential,' 'imposes a heavy burden on the objecting party,' and 'only permits reversal where the magistrate judge abused his discretion.'"  <u>Summa v. Hofstra Univ.</u>, 715 F. Supp. 2d 378, 384 (E.D.N.Y. 2010) (quoting <u>Mitchell v. Century 21 Rustic Realty</u>, 233 F.Supp.2d 418, 430 (E.D.N.Y. 2002)).

Similarly, under the "'contrary to law' standard of review, a district court may reverse a finding only if it finds that the magistrate 'fail[ed] to apply or misapplie[d]

relevant statutes, case law or rules of procedure.'" Garcia v. Benjamin Grp. Enter. Inc., 800 F. Supp. 2d 399, 403 (E.D.N.Y. 2011) (quoting Catskill Dev., LLC v. Park Place Entm't, 206 F.R.D. 78, 86 (S.D.N.Y. 2002)); see also Stevens v. HMSHost Corp., No. 10 CIV. 3571 (ILG) (VVP), 2012 WL 4801784, at *1 (E.D.N.Y. Oct. 10, 2012) (same) (quoting MacNamara v. City of New York, 249 F.R.D. 70, 77 (S.D.N.Y. 2008)).

**B. As to the Plaintiff's First Objection**

The Plaintiff asserts that the September 24, 2014 Order was "contrary to law" because Judge Lindsay allegedly "ignore[d] the evidence presented by [the] Plaintiff of common policies and practices that caused all ASMs to perform similar job duties." (The Pl.'s Rule 72 Mem. of Law at 2.) The Court disagrees.

In the September 24, 2014 Order, Judge Lindsay found that "Ahmed's reference in his renewed motion that he and the potential opt-in [P]laintiffs are similarly situated because [the] [D]efendants uniformly classify all ASMs, with the exception of the stores in California, as exempt from the FLSA's overtime provisions . . . is insufficient in itself to warrant conditional certification." (September 24, 2014 Order, Dkt. No. 138, at 7–8.)

This finding was entirely consistent with what this Court found in Ahmed I: "the mere fact of a common FLSA-exempt designation, job description or uniform training is insufficient to find [assistant store managers] 'similarly situated' for FLSA purposes.'" (June 8, 2013 Order, Dkt. No. 82, at 20) (quoting Guillen v. Marshalls of MA, Inc., No. 09 CIV. 9575 LAP GWG, 2012 WL 2588771, at *1 (S.D.N.Y. July 2, 2012)). Moreover, other district courts in this Circuit have routinely come to the same conclusion. See, e.g., Khan v. Airport Mgmt. Servs., LLC, No. 10 CIV. 7735 (NRB), 2011 WL 5597371, at *4 (S.D.N.Y. Nov. 16, 2011) ("To proceed as a collective action when making such a claim,

'it is not sufficient for [plaintiff] to show that he and the proposed class operated under the same job description.'") (alteration in original) (quoting Guillen v. Marshalls of MA, Inc., 750 F.Supp.2d 469, 476 (S.D.N.Y. 2010)); Jenkins v. TJX Companies Inc., 853 F. Supp. 2d 317, 323 (E.D.N.Y. 2012) (Spatt, J) ("As numerous courts in this Circuit have held, 'the mere classification of a group of employees—even a large or nationwide group—as exempt under the FLSA is not by itself sufficient to constitute the necessary evidence of a common policy, plan, or practice that renders all putative class members as 'similarly situated' for § 216(b) purposes.'") (quoting Vasquez v. Vitamin Shoppe Indus. Inc., No. 10 CIV. 8820 (LTS) (THK), 2011 WL 2693712, at *4 (S.D.N.Y. July 11, 2011)). As such, far from being contrary to the law, Judge Lindsay's finding was well-supported by prior decisions in this Circuit.

Even if the September 24, 2014 Order was not "contrary to the law," the Plaintiff contends that it was "clearly erroneous" because Judge Lindsay allegedly ignored evidence that the "Defendants centrally and tightly control the job duties of all employees, including ASMs" and that the Defendants' policies encouraged ASMs to perform "non-exempt work" by instructing ASMs to "'lead by example' by performing non-exempt tasks." (The Pl.'s Rule 72 Mem. of Law at 12.) The Court disagrees for three reasons.

First, encouraging ASMs to perform "non-exempt" work does not, by itself, violate the FLSA. Pursuant to 29 U.S.C. § 213(a)(1) only employees who work in a "bona fide" executive capacity are exempted from the FLSA overtime requirements. Significantly — and as Judge Lindsay correctly noted in the September 24, 2014 Order —, under the DOL regulations "concurrent performance of exempt and nonexempt duties

does not necessarily disqualify an employee from the executive exemption."  (September 24, 2014 Order, Dkt. No. 138, at 6–7); see also 29 C.F.R. § 541.106 ("Concurrent performance of exempt and nonexempt work does not disqualify an employee from the executive exemption if the requirements of § 541.100 are otherwise met.").  Rather, only those employees whose "primary duty is ordinary production work or routine, recurrent or repetitive tasks cannot qualify for exemption as an executive."  29 C.F.R. § 541.106.

To determine whether an employee's "primary duty" is the performance of tasks not exempt from overtime, a court can consider the following factors:

> the amount of time spent performing exempt work; the employee's relative freedom from direct supervision; and the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee

Mullins v. City of New York, 653 F.3d 104, 107 (2d Cir. 2011) (quoting 29 C.F.R. § 541.700(a)).

Here, there is nothing in the policy document entitled "Acts With Integrity" offered by the Plaintiff to suggest that ASMs' primary duties were "ordinary production work or routine, recurrent or repetitive tasks [which] cannot qualify for exemption as an executive."  (Rubin Decl., Ex. 35.)  Indeed, quite the opposite appears to be true.  While the document encourages ASMs to be "willing to perform all tasks by Associates," it does not require them to do so.  Nor does it specify how much time, if any, each ASM was supposed to spend performing the duties of an Associate.

Moreover, the document encourages ASMs to "[t]reat all Associates with respect and delegate work fairly"; "model[] responsible management expectations"; "[c]omplete and present[] Associate reviews"; and "[w]rite Associate schedule fairly and without

favoritism." (Id.) The relevant DOL regulations define "management" as including, "activities such as . . . training of employees; setting and adjusting their rates of pay and hours of work; directing the work of employees; . . . handling employee complaints and grievances; disciplining employees; planning the work; . . . [and] apportioning the work among the employees." 29 C.F.R. § 541.102. Therefore, the description of ASMs' duties as outlined in the policy document offered by the Plaintiff is consistent with tasks that the DOL has defined as related to "management." Thus, this document cannot plausibly be read to suggest that the Defendants subjected ASMs to a common policy encouraging them to perform primarily non-management work without paying them overtime.

Second, the Court finds that the statement by the Plaintiff that the Defendants "centrally and tightly control the job duties of all employees" to be unsupported in the record. In support of their contention, the Plaintiff relies on documents allegedly authored by the Defendants' corporate office establishing "best practices" for certain tasks, such as processing and stocking merchandise. (Rubin Decl. Exs. 33, 39, 40.) However, the Plaintiff fails to explain how the Defendants setting standards for "best practices" limits the discretion of employees. Indeed, the fact that the standards are called, "best practices," suggests that they are intended to be non-binding and to leave employees with discretion in performing their jobs. See Guillen v. Marshalls of MA, Inc., 841 F. Supp. 2d 797, 801 (S.D.N.Y. 2012) adopted, No. 09 CIV. 9575 LAP GWG, 2012 WL 2588771 (S.D.N.Y. July 2, 2012) ("Obviously, his pointing to a common policy at Marshalls regarding the job duties of ASMs provides no proof that other ASMs are

performing non-exempt duties, particularly given that all policies and writings from Marshalls dictate just the opposite.");

Third, even if the Defendants did "centrally and tightly control the job duties" of its employees, as noted above, this fact alone would not satisfy the named plaintiff's "modest burden" to show that he or she and the potential opt-in plaintiffs "'together were victims of a common policy or plan that *violated the law*.'" Myers, 624 F.3d at 555 (quoting Sbarro, 982 F.Supp. at 261) (emphasis added). The Plaintiff has not offered any evidence from which a court could plausibly conclude that these policies on their face violated the FLSA. See, e.g., Brickey v. Dolgencorp., Inc., 272 F.R.D. 344, 348 (W.D.N.Y. 2011) ("The [c]ourt declines to hold that facially-lawful policies, which encourage store management to make productive use of employees' time or to report for work when scheduled, can form the equivalent of a 'common policy or plan that violate[s] the law,' merely because they indirectly might encourage the minimization of overtime."); Khan, 2011 WL 5597371 at *4 ("We note as an initial matter that [the] plaintiff's reliance on the centralized job descriptions maintained by defendants is misplaced."). Therefore, the Court finds the Plaintiff's first objection to be without merit.

**C. As to the Plaintiff's Second Objection**

The Plaintiff next argues that the September 24, 2014 Order is "contrary to law" because Judge Lindsay allegedly did not consider the testimony that he had already offered in support of his first motion for certification in Ahmed I and instead, focused entirely on the new evidence submitted by the Plaintiff after Ahmed I. (The Pl.'s Rule 72 Mem. of Law at 5.) In particular, the Plaintiff contends that Judge Lindsay did not

consider the testimony of: (i) Jeffrey Souza ("Souza"), a former ASM who worked in a Massachusetts store; (ii) Settle, a former ASM who worked in an Arkansas store; (iii) Joseph Paparrato ("Paparrato"), a former ASM who worked in stores in Connecticut and New York; (iii) four "non-ASMs" who worked in stores in New York, including, Ann Esposito ("Esposito"), Amanda Holder ("Holder"), Cynthia Boyd ("Boyd"), Janet Sohmer ("Sohmer"); and (iv) three ASMs who also worked in New York stores, including Angela Dunscomb ("Dunscomb"), Philip Frenette ("Frenette"), and Reynaldo Pena ("Pena"). (Id. at 5–6.) Here again, the Court disagrees.

As the Defendants correctly note, all of the testimony pointed to by the Plaintiff, with the exception of the testimony of Souza, was before this Court in Ahmed I and found to be not sufficient to support conditional certification of a nationwide collective action. The fact that Judge Lindsay did not explicitly mention the evidence already submitted by the Plaintiff in Ahmed I does not mean that she ignored that evidence, as the Plaintiff contends. Nor, as the Defendants point out, was she under an obligation to reanalyze this Court's prior assessment of that evidence in deciding the Plaintiff's renewed motion. (The Defs.' Opp'n Mem. of Law at 10.)

Moreover, even if Judge Lindsay had ignored this evidence, the Plaintiff does not offer any reason why this evidence would have made conditional certification more likely. Indeed, quite the opposite appears to be true. Nearly all of the testimony pointed to by the Plaintiff were from individuals working in stores in New York and Connecticut. While Settle worked in stores in Arkansas, the Court in Ahmed I noted that it "simply cannot presume the existence of a de facto illegal policy . . . based on allegations from three Assistant Store Managers working in merely a handful of stores in the tri-state area

and in Arkansas."  (June 8, 2013 Order, Dkt. No. 82, at 27.); see also Guillen v. Marshalls of MA, Inc., 2012 WL 2588771, at *2 ("Moreover, what allegations do exist in this case are far too localized to merit a conditional nationwide class certification."); Vasquez, 2011 WL 2693712 at *3 ("[A] geographically concentrated cluster of SMs whom he claims were assigned duties inconsistent with their exempt classification . . . is too thin a reed on which to rest a nationwide certification.").

Thus, the Court finds that the addition of this evidence, which the Court in Ahmed I described as "extremely thin," does not leave the Court "with the definite and firm conviction that a mistake has been committed" by Judge Lindsay.  See Pall Corp., 655 F. Supp. 2d at 172 ("[T]he district court must affirm the decision of the magistrate judge unless the district court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.").  Accordingly, the Court also finds that the Plaintiff's second objection to be without merit.

**D. As to the Plaintiff's Third Objection**

The Plaintiff further objects to the September 24, 2014 Order as "contrary to law" because the "combination of the policy evidence and the evidence from over 40 stores in nine states should have resulted in an easy decision in favor of conditional certification."  (The Pl.'s Rule 72 Mem. of Law at 16.)  Again, the Court is not persuaded.

As explained above, the Court does not find that the Defendants' facially natural policies support an inference that the Defendants misclassified ASMs nationwide as exempt from overtime.  Furthermore, the fact that the Plaintiff presented evidence from ASMs in nine states, without more, does not, as the Plaintiff suggests, show that the

Defendants had a *de facto* illegal policy. <u>Costello v. Kohl's Illinois, Inc.</u>, No. 1:13-CV-1359 (GHW), 2014 WL 4377931, at *6 (S.D.N.Y. Sept. 4, 2014) ("While the required factual showing for conditional certification is modest, the mere existence of a certain number of plaintiffs, covering a sufficiently widespread geographic area, should not be expected by itself to give rise to a legally sufficient basis to find that plaintiffs are similarly situated across the nation."). Rather, the "key remains whether there is 'actual evidence of a link' between plaintiffs and those across the nation[.]" <u>Id.</u> (quoting <u>Guillen</u>, 841 F.Supp.2d at 803).

In the present case, this Court and Judge Lindsay have previously found that the Plaintiff had failed to establish such a link between himself and the nine other former ASMs whose testimony he offered in support of his motions for conditional certification. In particular, the Court in <u>Ahmed I</u> noted that Paparrato, a former ASM who worked in stores in Connecticut and New York, had testified that he "rarely performed non-managerial tasks" and that his responsibilities included managerial tasks, such as "conducting interviews for new hires, participating in hiring new associates, contributing to decisions to terminate employees, disciplining employees and scheduling." The Court found that Paparrato's testimony was inconsistent with the Plaintiff's allegations that he had limited discretion and was required to perform non-managerial tasks. (June 8, 2013 Order, Dkt. No. 82, at 23.)

Similarly, Judge Lindsay in <u>Ahmed II</u> noted that Wagner, Woodard, Moore, and Baruch — four former ASMs who worked in stores from New York, Mississippi, Tennessee, and Connecticut — testified at their depositions that they "at all times considered themselves to be management" and "all had exempt managerial

responsibilities including supervising, recruiting associates, interviewing, participating in the hiring process, counseling, scheduling, training, performance reviews, addressing customer complaints, exercising discretion with respect to merchandise markdowns, disciplining, writing corrective actions and having input with respect to terminating employees." (September 24, 2014 Order, Dkt. No. 138, at 11.) Unlike the Plaintiff's testimony, the testimony of Wagner, Woodard, Moore, and Baruch suggests that the Defendants did properly classify them as exempt from overtime.

Judge Lindsay found that the statements from the other four former ASMs who worked in stores in New York, Pennsylvania, Arkansas, and Alabama "are simply insufficient to establish a factual nexus between Ahmed and the thousands of ASMs working in more than 4000 stores nationwide." (Id. at 14.)

The Plaintiff points to no binding Second Circuit authority, which Judge Lindsay allegedly misapplied in reaching this decision. Moreover, the Court finds the determination by Judge Lindsay to be entirely consistent with other district courts in this Circuit that have rejected nationwide conditional collective action approvals in similar circumstances. See, e.g., Guillen v. Marshalls of MA, Inc., No. 09 CIV. 9575 (LAP) GWG, 2012 WL 2588771, at *2 (S.D.N.Y. July 2, 2012) ("Accordingly, for the reasons Judge Gorenstein stated in his Report and Recommendation, [the] [p]laintiff's allegations are deficient in this regard, resting on a handful of ASM affidavits, each of which recounts individual incidents of being required to perform non-exempt tasks."); Brickey, 272 F.R.D. 344, 348 ("Although [the] [p]laintiffs have offered some evidence that certain Dolgencorp managers flouted Dolgencorp's policies, plaintiffs have not shown that such activity was widespread or common practice, or that the managers did so because they

were instructed, compelled, forced, or encouraged to do so by other Dolgencorp policies.").

Accordingly, the Court finds that the September 24, 2014 Order was not "contrary to the law" or an abuse of discretion. <u>See</u> <u>Garcia</u>, 800 F. Supp. 2d 399, 403 (E.D.N.Y. 2011) ("[U]nder the 'contrary to law' standard of review, a district court may reverse a finding only if it finds that the magistrate 'fail[ed] to apply or misapplie[d] relevant statutes, case law or rules of procedure.'") (quoting <u>Catskill Dev., LLC v. Park Place Entm't</u>, 206 F.R.D. 78, 86 (S.D.N.Y. 2002)).

**E. As to the Plaintiff's Fourth Objection**

Finally, the Plaintiff contends that Judge Lindsay's analysis of the testimony of Baruch, Wagner, Woodard, and Moore was clearly erroneous and contrary to the law. (The Pl.'s Rule 72 Mem. of Law at 17.)

As noted above, Judge Lindsay found that the Plaintiff failed to make a "modest showing" that he was similarly situated to Baruch, Wagner, Woodard, and Moore. (September 24, 2014 Order, Dkt. No. 138, at 11.) She noted that the Plaintiff had testified that "he was closely supervised, did not have independent authority to perform exempt managerial duties, and had no discretion or control over any of the store's employees." (<u>Id.</u> at 8.) By contrast, Baruch, Wagner, Woodard, and Moore had testified that "while they spent the majority of their time performing non-managerial tasks they did so at their own discretion, balancing their managerial duties with the daily requirements of the store." (<u>Id.</u> at 11.) Moreover, unlike the Plaintiff, they testified they all had exempt managerial responsibilities. (<u>Id.</u> at 11.) Thus, Judge Lindsay found that

their "testimony supports the inference that from store to store and state to state, there were material differences in the duties and responsibilities of ASMs." (Id. at 12.)

The Court does not find Judge Lindsay's conclusion to be "clearly erroneous" because it is well-supported by the record. See Mobil Shipping & Transp. Co., 190 F.3d at 67 ("Under the clear error standard, we 'may not reverse [a finding] even though convinced that had [we] been sitting as the trier of fact, [we] would have weighed the evidence differently.'") (quoting Anderson v. Bessemer City, 470 U.S. 564, 574, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985)). For example, Baruch, Moore, and Wagner testified that they had authority to make recommendations regarding interviewing and hiring prospective employees. (Marino Decl., Ex. 29, at Tr. 100:10–102:3; Marino Decl. Ex. 27, at Tr. 44:20–24; Rubin Decl., Ex. 12, at Tr. 108:22–109:1; 123:17–25.) Similarly, Woodard and Baruch testified that one of their primary duties was to supervise: Baruch testified that every day he walked around the store to "make sure the associates that are out there are doing their departments"; and Woodard testified that he had "15 to 20 associates and coordinators" who reported to him when he was on duty. (Marino Decl., Ex. 29, at Tr. 100:10–102:3; 144:13–15.)

The Plaintiff contends that Judge Lindsay failed to examine the full testimony of the Plaintiff and Baruch, Wagner, Woodard, and Moore, which he claims makes clear that they "indicated they had no choice but to perform primarily [non-managerial] duties." (The Pl.'s Rule 72 Mem. of Law at 18.)

However, the Court finds that the testimony relied on by the Plaintiff tends to support Judge Lindsay's conclusion that unlike the Plaintiff, Baruch, Wagner, Woodard, and Moore had discretion as to the amount of non-managerial tasks they performed. For

example, the Plaintiff quotes the testimony of Moore, namely, "I'm performing more non-managerial duties than I would like to be doing. But I feel like I have to do because most of the time, as I stated before, the budget keeps us from having those people at the time[.]" (Rubin Decl., Ex. 12, Tr. 243:18–25.) Similarly, Woodard testified that although the "best practices" established by the Defendants governed how sales employees did their jobs, they did not "dictate" how he did his job. (Rubin Decl., Ex. 11, at Tr. 221:11–15.) Nothing in these statements suggests, as the Plaintiff appears to contend, that Moore and Woodard were required to perform non-managerial tasks.

The Plaintiff next claims that even if Baruch, Wagner, Woodard, and Moore did have more discretion than the Plaintiff in performing non-management tasks, this distinction is "immaterial" for the purpose of determining whether they are similarly situated so to warrant conditional certification of a collective action. (The Pl.'s Rule 72 Mem. of Law at 17.) That is not the case. The relevant DOL regulations state that discretion is the principal factor in determining whether an employee is a manager, not the amount of time they spend performing non-management tasks:

> assistant managers in a retail establishment who perform exempt executive work such as supervising and directing the work of other employees, ordering merchandise, managing the budget and authorizing payment of bills may have management as their primary duty even if the assistant managers spend more than 50 percent of the time performing nonexempt work, such as running the cash register. However, if such assistant managers are closely supervised and earn little more than the nonexempt employees, the assistant managers generally would not satisfy the primary duty requirement.

29 C.F.R. § 541.700(c); see also Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2554, 180 L. Ed. 2d 374 (2011) ("A 'policy' of allowing discretion by local supervisors over employment matters . . . [o]n its face, of course, that is just the opposite of a uniform

employment practice that would provide the commonality needed for a class action; it is a policy against having uniform employment practices."). Thus, the Court finds that Judge Lindsay correctly concluded that the fact that Baruch, Moore, Wagner, and Woodard allegedly exercised more discretion in performing their duties than the Plaintiff to be a highly relevant and material distinction.

Finally, the Plaintiff characterizes Judge Lindsay's analysis of the testimony of the Plaintiff, Baruch, Moore, Wagner, and Woodard as an attempt to resolve factual disputes and make credibility determinations that are improper at the conditional certification stage. (The Pl.'s Rule 72 Mem. of Law at 20.)

The Plaintiff is correct that at the first step of the collective action test, the Second Circuit in Myers stated that a plaintiff must only "make a 'modest factual showing" that they and potential opt-in plaintiffs 'together were victims of a common policy or plan that violated the law.'" Myers, 624 F.3d at 555 (quoting Sbarro, 982 F.Supp. at 261). Although not stated by the Second Circuit, subsequent district courts have concluded that in determining whether a plaintiff has met this "modest showing," a court "may not 'resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations.'" Jeong Woo Kim v. 511 E. 5th St., LLC, 985 F. Supp. 2d 439, 446 (S.D.N.Y. 2013) (quoting Lynch v. United Servs. Auto. Ass'n, 491 F. Supp. 2d 357, 367-68 (S.D.N.Y. 2007))

However, the "modest factual showing" "cannot be satisfied simply by 'unsupported assertions[.]" Myers, 624 F.3d at 555 (quoting Dybach v. State of Fla. Dep't of Corrections, 942 F.2d 1562, 1567 (11th Cir. 1991)). District courts in this Circuit frequently analyze the deposition testimony offered by plaintiffs in support of

their motions to determine whether there is a "factual nexus between the claims of the named plaintiff and those who have chosen [or might potentially choose] to opt-in to the action." Jeong Woo Kim v. 511 E. 5th St., LLC, 985 F. Supp. 2d 439, 445 (S.D.N.Y. 2013) (quoting Davis v. Lenox Hill Hosp., No. 03 Civ. 3746(DLC), 2004 WL 1926086, at *7 (S.D.N.Y. Aug. 31, 2004)).

Indeed this Court in Ahmed I conducted such an analysis: "Also, of importance, the other four Assistant Store Managers who worked with the Plaintiff and Casale did not make the same allegations as the Plaintiff and Casale in their deposition testimony and, in some ways, their testimony even cut against the claims of the Plaintiff and Casale." (June 8, 2013 Order, Dkt. No. 82, at 27); see also Guillen v. Marshalls of MA, Inc., No. 09 CIV. 9575 (LAP) (GWG), 2012 WL 2588771, at *2 (S.D.N.Y. July 2, 2012) ("In his objections, [the] [p]laintiff argues that Judge Garenstein's Order 'quite literally required Plaintiff to prove that putative collection action members are similarly situated as to the merits of the claims .' . . . This is both inaccurate and borders on misrepresenting Judge Gorenstein's opinion. The opinion requires no more than something beyond unsupported allegations — something that could 'plausibly lead to the inference that ASMs nationwide are performing non-exempt tasks.'"); Khan v. Airport Mgmt. Servs., LLC, No. 10 CIV. 7735 (NRB), 2011 WL 5597371, at *4 (S.D.N.Y. Nov. 16, 2011) (in denying a motion for conditional certification, the court noted that "none of these individuals has submitted declarations supporting Khan's claims, and as previously referenced, several have submitted declarations expressly rejecting the notion that they do not perform managerial functions.").

Therefore, the Court finds Judge Lindsay's analysis of the deposition testimony offered by the Plaintiff in support of his motion to be entirely proper and appropriate. Accordingly, based on the foregoing reasons, the Court finds the Plaintiff's fourth objection to be without merit.

### III. CONCLUSION

For reasons set forth above, the Court denies the motion by the Plaintiff pursuant to Fed. R. Civ. P. 72 to set aside the September 24, 2014 Order by United States Magistrate Judge Arlene R. Lindsay.

**SO ORDERED.**
Dated: Central Islip, New York
May 11, 2015

*Arthur D. Spatt*
ARTHUR D. SPATT
United States District Judge